IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARIN BROWNING,                      )
                                     )
              Plaintiff,             )
                                     )
vs.                                  )          Case No. 15-cv-1222-JPG-CJP
                                     )
COMMISSIONER of SOCIAL SECURITY,     )
                                     )
              Defendant.             )

## MEMORANDUM and ORDER

**GILBERT, District Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Darin Browning, represented by counsel, seeks judicial review of the final agency decision denying him Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Mr. Browning applied for benefits in July 2012, originally alleging disability beginning on October 17, 1996. The alleged date of onset was later amended to July 30, 2012. After holding an evidentiary hearing, ALJ Lee Lewin denied the application for benefits on June 17, 2014. (Tr. 78-86.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Administrative remedies have been exhausted, and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1.     The ALJ incorrectly found that plaintiff did not meet Listing 5.06B (Inflammatory Bowel Disease) based on
       (a)     Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; and
       (b)     Involuntary weight loss of at least 10 percent from baseline, as computed in

pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart.

2.     The ALJ ignored evidence that plaintiff met Listing 5.06B (Inflammatory Bowel Disease) based on

    (a)     Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; and

    (b)     Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart.

### Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in

> past relevant work.  If an applicant can engage in past relevant work, he is not disabled.   The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *accord Weatherbee v. Astrue*, 649 F.3d 565, 568-69 (7th Cir. 2011).

Stated another way, it must be determined:  (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.   If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.   *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984); *see also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled….   If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the

scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive…."   42 U.S.C. § 405(g).   Thus, this Court must determine not whether Mr. Browning was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   *See Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).   This Court uses the Supreme Court's definition of substantial evidence, *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.   *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Lewin followed the five-step analytical framework described above.   She determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date.   She found that plaintiff had severe impairments of Tetralogy of Fallot (status-post heart surgery, stent removal, valve repair and replacement) and Crohn's disease (status-post bowel resection, ileostomy, and ileostomy reversal).[1]   Based on the testimony of a medical expert, she further determined that these impairments do not meet or equal a listed impairment.

---

[1] Tetralogy of Fallot is "a rare condition caused by a combination of four heart defects that are present at birth." http://www.mayoclinic.org/diseases-conditions/tetralogy-of-fallot/basics/definition/CON-20043262, visited on January 20, 2017.

The ALJ found that Mr. Browning had the residual functional capacity (RFC) to perform work at the sedentary exertional level with some physical limitations.   Plaintiff had no past relevant work.   Based on the testimony of a vocational expert, the ALJ found he was able to do other jobs which exist in significant numbers in the national and regional economies.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to the points raised by plaintiff.

1.      **Agency Forms**

Plaintiff was born in 1993 and was 19 years old on the alleged onset date of July 30, 2012. (Tr. 172.)   He had never worked.   He had graduated from high school.   (Tr. 176.)

2.      **Evidentiary Hearing**

Mr. Browning was represented by an attorney at the evidentiary hearing in March 2014. (Tr. 15.)

Sai Nimmagadda, M.D., testified as a medical expert.   He is board certified in allergy immunology and pulmonary medicine, and had been practicing medicine for about 20 years.   He had been a special advisor to social security for about 15 years.   He had treated patients with Crohn's disease, which is an autoimmune infectious inflammatory disorder.   He did not examine plaintiff, but testified based on a review of the record.   (Tr. 43-44.)

Dr. Nimmagadda testified that plaintiff had a history of Tetralogy of Fallot, which is a congenital heart disease.   He had surgery for that condition, which was successful, although he still had a low ejection fraction.   (Tr. 45.)   The doctor testified that plaintiff had some complications of Crohn's disease.   He had lost weight due to Crohn's disease; his weight

appeared to have stabilized at about 190 pounds.   He had anemia; Exhibit 13F, page 40 showed hemoglobin of about 8 milligrams per deciliter.   He also had anal fissures.   Dr. Nimmagadda did not see any evidence of perirectal abscess.   (Tr. 46.)

The ALJ asked Dr. Nimmagadda whether plaintiff's impairments met or equaled any listed impairment.   The doctor replied:

> A.      With the Crohn's disease and looking at listing 5.06, on occasion he does meet – or I would say – I would revise that.   On occasion, there a few areas of a listing such as the anemia, but he doesn't necessarily have the other findings which would quantify [sic] meets or equals listing level with that.   If he, if the abscesses of the perianal disease continues to be present for an addition [sic] two to three months, then he would meet two of those criteria which would, then would meet the listing under 5.06.
>
> Q:     But at this time, we don't have the duration?
>
> A:      At this point, we don't have the duration for that.
>
> Q:     Okay, so does he not meet or equal any listings?
>
> A:      Correct.

(Tr. 47.)

A vocational expert (VE) also testified, but, as plaintiff has not raised an issue related to the RFC assessment, it is not necessary to review her testimony.

**3.      Medical Records**

Mr. Browning was born with the condition of Tetralogy of Fallot, and underwent surgery to repair heart defects as a young child.   (Tr. 345.)   In June 2013, shortly after his twentieth birthday, he underwent an attempted catheterization procedure at St. Louis Children's Hospital to place a Melody valve in his heart.[2]   Complications developed when a stent became trapped, and

---

[2] "The Melody® Transcatheter Pulmonary Valve (also known as a "Melody valve") is a replacement pulmonary heart valve.   It's used to replace a blocked or leaky valve that has been previously repaired to correct congenital heart defects present at birth."   https://www.childrenscolorado.org/doctors-and-departments/departments/heart/programs-

emergency surgery was done to remove the stent, repair the tricuspid valve, and insert the replacement valve.  (Tr. 795-97.)   Following surgery, he was admitted to the intensive care unit for one day and then transferred to a regular floor.   (Tr. 966-68, 1149.)   He was discharged three days after surgery.   In a cardiac follow-up visit in July 2012, the doctor noted that he was recovering well with no evidence of inflammation.   (Tr. 1162-63.)

Mr. Browning also has Crohn's disease.[3]   In July 2012, he underwent emergency surgery consisting of ileal resection and end ileostomy.   (Tr. 415-16.)   An elective take-down of the ileostomy was done in February 2013.   (Tr. 531-32.)

On January 23, 2014, plaintiff's primary care physician diagnosed a pilonidal cyst.   He weighed 188 pounds.   (Tr. 1285-87.)   On February 11, 2014, the doctor diagnosed a pilonidal cyst with abscess.   His weight was 182 pounds.   The primary care doctor referred him to a surgeon for treatment of the abscess.   (Tr. 1282-83.)   A surgeon at St. Louis Children's Hospital diagnosed a complex perirectal abscess and performed surgery consisting of incision and drainage. (Tr. 1291-92.)

Plaintiff was diagnosed with a right gluteal abscess in March 2014.   An incision and drainage procedure was performed at St. Louis Children's Hospital on March 19, 2014.   He was to be followed in the Irritable Bowel Clinic at that hospital thereafter.   (Tr. 1294-95.)

## Analysis

A finding that a claimant's condition meets or equals a listed impairment is a finding that the claimant is presumptively disabled.   In order to be found presumptively disabled, the claimant

---

and-clinics/cardiac-catheterization/melody-transcatheter-pulmonary-valve/, visited on January 24, 2017.

[3] "Crohn's disease is an inflammatory bowel disease (IBD).   It causes inflammation of the lining of your digestive tract, which can lead to abdominal pain, severe diarrhea, fatigue, weight loss and malnutrition." http://www.mayoclinic.org diseases-conditions/crohns-disease/basics/definition/con-20032061, visited on January 24, 2017.

must meet all of the criteria in the listing; an impairment "cannot meet the criteria of a listing based only on a diagnosis."   20 C.F.R. § 404.1525(d).

"To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment."   *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).   Further, plaintiff bears the burden of proving that he meets or equals all of the criteria of a Listing.   *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

The relevant requirements of Listing 5.06B are

Inflammatory bowel disease (IBD) documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with:

B. Two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6-month period:

1.     Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or

*  *  *

4.     Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

5.     Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.06B.

Plaintiff argues that he meets the anemia requirement based on the medical expert's testimony, and that the medical records establish that he meets the requirements of both paragraphs 4 and 5.

As an initial matter, plaintiff argues that the ALJ failed to recognize that he submitted Exhibit 25F, the March 2014 records from St. Louis Children's Hospital on March 27, 2014,

before she rendered her decision.   The ALJ did not mention those records, and they were logged into the record as only having been submitted in conjunction with the Appeals Council review. *See* Tr. 6.

The records in question have a date stamp in the upper left corner reading 03/27/2014. The fax header at the top of the pages shows they were faxed by plaintiff's counsel.   (Tr. 1294-96.)   Defendant does not dispute that the records should have been marked as hearing level evidence and should have been considered by the ALJ.   Rather, she argues that the mistake was harmless because the records do not establish that plaintiff met Listing 5.06B.   It appears to the Court that plaintiff is correct, and that the records located at Tr. 1294-96 were submitted prior to the ALJ's decision.   However, the Court also agrees that any error in overlooking those records was harmless.

The medical expert, Dr. Nimmagadda, testified that plaintiff had anemia.   He cited Exhibit 13F, page 40.   (Tr. 46.)   Exhibit 13F, page 40, is the record of lab results from June 2013.   (Tr. 1013.)   Listing 5.06B requires anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart.   Dr. Nimmagadda did not cite any other test result showing hemoglobin of less than 10.0 g/dL on any other date, and plaintiff has not pointed to any such evidence.   Dr. Nimmagadda did not affirmatively state that anemia was present on at least two occasions 60 days apart.   *See* Tr. 47.   Plaintiff's argument assumes that the doctor definitely testified that he met the requirements of subparagraph 1, which is an assumption that is not justified by the record.   However, even if Dr. Nimmagadda's testimony can be read to establish that he met the anemia requirement, his arguments still fail.

Even assuming that plaintiff's condition satisfies the anemia requirement, both of his arguments overlook the fact that Listing 5.06B requires that the conditions described in the

numbered subparagraphs occurred "within the same consecutive 6-month period."   Plaintiff has not pointed to any record reflecting anemia other than the record from June 2013.   Under his theory, he must show that his weight loss or perineal disease with a draining abscess or fistula occurred within the same consecutive 6-month period as his anemia.   He has not even attempted to do so.

The medical records reflect treatment for a pilonidal cyst/complex perirectal abscess and a right gluteal abscess from January 23, 2014, to March 19, 2014.   Defendant argues that this does not meet the requirements of subparagraph 4 because the evaluations were less than 60 days apart. She is correct in that it was a little less than 60 days from January 23, 2014, to March 19, 2014. However, a more fundamental problem is that the treatment was not during the same consecutive 6-month period as plaintiff's documented anemia.

Similarly, plaintiff's weight loss did not occur in the same consecutive 6-month period as his anemia.   Plaintiff filed a reply brief citing his weight as reflected in the medical records.   *See* Doc. 33, pp. 1-2.   The recorded weights do not reflect that he lost at least 10 percent of his body weight in any consecutive 6-month period that would include the hemoglobin level test from June 2013.   On January 13, 2013, he weighed 203 pounds.   The lowest weight reflected thereafter is 187 pounds on July 8, 2013, which is less than a 10 percent loss.

Later records reflect that plaintiff weighed 182 pounds on February 11, 2014.   (Tr. 1282.) That weight is more than 10 percent less than his weight of 203 pounds.   However, this evidence does not establish that he meets the weight loss requirement of subparagraph 5 because the loss of at least 10 percent of his weight is not documented on two evaluations at least 60 days apart *and* the evidence does not show that he lost at least 10 percent of his weight during the same consecutive 6-month period as his documented anemia.

Plaintiff has not argued that he meets the Listing based on the combination of subparagraphs 4 and 5.   That argument would also fail because the evidence does not establish that he met the requirements of those paragraphs in the same consecutive 6-month period.

As was noted above, it is plaintiff's burden to prove that he meets or equals all of the criteria of a Listing.   *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).   Plaintiff has not done so here.   Even if reasonable minds could differ as to whether Mr. Browning was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot reweigh the evidence or substitute its judgment for that of the ALJ.   *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).   The ALJ reasonably relied on the testimony of the medical expert in determining that Mr. Browning did not meet or equal a Listing.   Plaintiff has not demonstrated that she erred in doing so.

### Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Lewin committed no errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Darin Browning's application for disability benefits is **AFFIRMED**.

The clerk of court shall enter judgment in favor of defendant.

**IT IS SO ORDERED.**
**DATE:   January 30, 2017**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**